**E-FILED on**    9/6/05

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| ROYAL INDEMNITY GROUP, THE GREYSTONE GROUP, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>THE TRAVELERS INDEMNITY COMPANY OF RHODE ISLAND, STEDMAN CONSTRUCTION COMPANY, DOES 1-100,<br><br>Defendants. | No. C-04-00886 RMW<br><br>ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT AND ADJUDICATION; GRANTING IN PART AND DENYING IN PART ROYAL INDEMNITY'S MOTION TO STRIKE<br><br>**[Re Docket No. 27, 28, 29, 60]** |

     Plaintiffs Royal Indemnity Group ("Royal") and Greystone Group, Inc. ("Greystone") move for summary adjudication on two issues: (1) that defendant Travelers' Indemnity Company of Connecticut[1] ("Travelers") had a duty to defend co-defendant Stedman Construction Company ("Stedman") against a cross-complaint brought by Greystone in a now-resolved California state court action; and (2) that coverage under the policies issued to Stedman by Travelers was triggered by the occurrence of property damage during the coverage period irrespective of when that damage manifested or whether the present claimant then owned the property. Plaintiffs also move to strike portions of Travelers' reply to its motion for summary adjudication and its opposition to plaintiffs' motion for summary judgment. Defendant Travelers moves for summary judgment on

---

[1]     Defendant was erroneously sued as The Travelers Indemnity Company of Rhode Island.

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE—C-04-00886 RMW
MAG

plaintiffs' complaint as a whole, contending that plaintiffs' claims should either be stricken for failure to prosecute, are barred by the statute of limitations, or are otherwise unsupportable based on the record before the court. These motions were heard on April 22, 2005. The court has reviewed the papers and heard the arguments of the parties. For the reasons set forth below, the court grants Royal's motion for summary adjudication and grants in part and denies in part Travelers' motion for summary judgment.

## I. BACKGROUND

This is an insurance coverage dispute concerning alleged construction defects in an apartment complex in San Jose known as "The Fountains." The dispute is essentially between two insurance companies: Royal, the insurance provider for the owner of the apartment complex, and Travelers, the insurance provider for one of the subcontractors on the original construction of the complex.

In 1990 and 1991 the developer and original owner, WIC/W188 Ltd. ("WIC") worked with general contractor Worthing to build the complex. Worthing retained Stedman as a framing contractor on the project. During the time it worked on the Fountains project, Stedman held two Commercial General Liability ("CGL") insurance policies with defendant Travelers: policy number EE-SLS-685J728-5-89, in force September 22, 1989 through September 22, 1990 ("the 1989 policy"); and policy number EE-SLS-685J728-5-89-90, in force September 22, 1990 through September 22, 1991 ("the 1990 policy") (collectively "the Stedman policies").

While construction was ongoing, Worthing sold its assets to plaintiff Greystone, which assumed Worthing's rights and responsibilities. WIC, Worthing, and Greystone were insured by plaintiff Royal. After the completion of the project, The Fountains changed ownership. On or about June 5, 1996, Bay Apartment Communities, known since 1999 as AvalonBay Communities ("AvalonBay"), purchased The Fountains.[2] Hungerford Decl., Exh. K.

---

[2] Travelers asks the court to take judicial notice of the four complaints filed in the AvalonBay action as well as the order and judgment entered against Stedman. Plaintiffs ask for judicial notice of the Third Amended Complaint in the AvalonBay action and the cross-complaint filed by Greystone in that action. The court grants both parties' requests.

### A. The AvalonBay Action

In 1999, AvalonBay filed suit in Santa Clara Superior Court over damage to the property caused by, *inter alia*, water intrusion resulting from alleged defects in construction. *AvalonBay Communities, Inc. v. WIC/W188*, No. CV782693 ("*AvalonBay* action"). The Third Amended Complaint in the matter, filed on September 13, 2000, added Greystone and Stedman as defendants. Harrington Decl., Exh. 1. In the complaint, AvalonBay alleged that "during the approximate period of 1990 to the date of this Third Amended Complaint, Defendants negligently . . . constructed, inspected and installed the Project elements, including, but not limited to, the Project's framing, exterior siding and siding systems. . . ." AvalonBay Third Amended Complaint ("ATAC"), Harrington Decl., Exh. 1 ¶ 32. The complaint further alleged that AvalonBay "sustained and suffered consequential damages resulting from Defendants' acts and/or omissions, including, without limitation, physical injury and/or destruction of tangible property and the loss of use of the Project to real and personal property within the Project as a result of said acts and/or omissions . . . ." ATAC ¶ 30; *see id.* ¶ 38. The ATAC further sets forth that AvalonBay was "unaware of when all of the defective conditions alleged first occurred or manifested themselves or caused physical injury to or destruction of tangible property . . . but asserts that the construction deficiencies at the Project have developed and occurred over a number of years . . . said deficiencies and resulting physical injuries being continuous and progressive." *Id.* at ¶ 29.

### B. Tenders

WIC and Worthing tendered the *AvalonBay* action to Travelers under Stedman's CGL policies for defense and indemnification. Travelers rejected the tender in a letter dated April 1, 2001, asserting that the Certificate of Insurance naming Worthing lacked an Additional Insured Endorsement, thus neither entity was an additional insured under the relevant CGL policy. Hungerford Decl., Exh. H. Thus, plaintiff Royal alone defended WIC, Worthing, and Greystone in the *AvalonBay* action. Pursuant to a contractual indemnity clause in the subcontract between Worthing/Greystone and Stedman, Greystone cross-complained for indemnity against Stedman on March 30, 2001. Harrington Decl., Exh. 2.

After receiving the tender from WIC and Worthing, Travelers sent a letter to Stedman on April 3, 2001, care of its vice president, Robert Douds. This letter denied coverage to Stedman stating that Stedman's policies had expired in 1991 – prior to 1996 AvalonBay's acquisition of the property to which it claimed damage attributable to Stedman had occurred. Mathews Decl., Exh. 7. Stedman subsequently tendered to

Travelers Greystone's cross-complaint for defense and indemnity on October 19, 2001, which Travelers declined on similar grounds. Mathews Decl., Exh. 5. Stedman did not appear in the *AvalonBay* action, failing to answer either AvalonBay's complaint or Greystone's cross-complaint. On September 17, 2002, the court granted a default judgment against Stedman on the cross-complaint in the amount of $ 2,648,804.18, plus $62,785.18 in costs and attorney's fees incurred by Greystone defending the *AvalonBay* action. Travelers' Req. Judicial Notice, Exh. G.

Eventually, AvalonBay settled with Greystone and Greystone settled with Stedman. In its settlement with Greystone, Stedman assigned its claims against Travelers to Greystone. Royal asserts that it is subrogated to any rights Greystone may have against any third party in the *AvalonBay* action by virtue of having defended Greystone. *Rossmoor Sanitation, Inc. v. Pylon, Inc.*, 13 Cal. 3d 622, 633-34 (1975); *In re Romero*, 956 S.W. 2d 659, 661 (Tex. App. 1997); *see also Thoreson v. Thompson*, 431 S.W. 2d 341, 347 (Tex. 1968) ("By paying part of plaintiff's loss, its insurer . . . became a pro tanto owner of the cause of action. The payment itself creates this right and need not be expressed in the insurance contract.").

### C. The Present Suit

In the present action, plaintiffs Greystone and Royal seek payment for (1) amounts allegedly incurred by WIC, Worthing/Greystone, and Royal in the *AvalonBay* action; (2) amounts allegedly incurred by Stedman as a result of Travelers' failure to defend and indemnify under the insurance policy; (3) amounts allegedly incurred by Greystone as a result of Travelers' failure to defend and indemnify it directly under the insurance policy; and (4) amounts Travelers allegedly should have contributed toward settling Greystone's liability in the *AvalonBay* action. Plaintiffs' claims are based upon a combination of direct claims against Stedman and Travelers and claims assigned by Stedman as a result of its settlement with Greystone.

First, Greystone sues Stedman directly for express indemnity based on a provision in the construction subcontract between Greystone and Stedman (claim 1).

Second, Greystone sues Stedman based on an assignment from AvalonBay of AvalonBay's claims for negligence and strict liability (claims 2 and 3).

Third, Greystone sues Travelers directly for breach of the insurance contract. Greystone contends that it is an additional insured under Travelers' insurance policy (claim 4).

Fourth, Greystone sues Travelers for breach of contract on Stedman's behalf. Greystone's right to sue is based upon Stedman's assignment of its claims against Travelers to Greystone as part of the settlement between Greystone and Stedman in the AvalonBay action (claim 5).

Fifth, Royal sues Travelers (1) in its own right for equitable contribution and (2) by subrogration to Greystone's rights, which includes the assignment of Stedman's rights against Travelers (claim 6).

Finally, plaintiffs seek declaratory relief (claim 7).

## II. ANALYSIS

The parties do not dispute that the outcome of the underlying *AvalonBay* action resulted in default judgment against Stedman. Nor do they dispute that the policies between Stedman and Travelers were standard third party CGL insurance policies. What they do dispute is (1) whether the policies are to be interpreted in accordance with Texas or California law; (2) whether Travelers had a duty to defend; and (3) even assuming Travelers had a duty to defend, which, if any, claims Royal and Greystone may legitimately assert against Travelers in this action. Travelers asserts that the court's determination regarding the law applicable to the insurance contracts impacts the analysis of Travelers' duty to defend, because California and Texas law differ as to what triggers liability coverage under a standard CGL insurance policy.

### A. Summary Judgment

Summary judgment is proper when there are no genuine issues as to any material fact and the moving party is entitled judgment as a matter of law. *See* Fed R. Civ. P. 56(c). Where the non-moving party bears the burden of proving an element of a claim, a party moving for summary judgment may simply "point[ ] out . . . the absence of evidence to support [the] claim." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). The burden then shifts to the non-moving party to present evidence that could cause a reasonable jury to find in its favor. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The court must view the evidence in the light most favorable to the non-moving party. *See Rowe v. City & County of San Francisco*, 186 F. Supp. 2d 1047, 1050 (N.D. Cal. 2002).

### B. Choice of Law

The threshold issue in this case is whether Texas or California law governs the interpretation of the insurance policy. In a diversity case, a federal district court is to apply the law of the forum state for choice of law purposes. *Homedics, Inc. v. Valley Forge Ins. Co.*, 315 F.3d 1135, 1138 (9th Cir. 2003) (citing

1  *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Thus, California choice of law rules
2  apply to this action.
3        Royal argues that California's choice of law rules require the court to apply the governmental interest
4  test to determine whether Texas or California law applies. *Washington Mutual Bank, FA v. Superior Court*,
5  24 Cal. 4th 906, 915 (2001). ("[W]hen there is no advance agreement on applicable law, but the action
6  involves the claims of residents from outside California, the trial court may analyze the governmental interests
7  of the various jurisdictions involved to select the most appropriate law.").  Travelers, on the other hand,
8  contends that to determine the law governing a contract, California courts look first to the relevant statute and,
9  only should further guidance be necessary, second to the governmental interest test. *Shannon-Vail Five, Inc.*
10 *v. Bunch*, 270 F.3d 1207, 1210 (9th Cir. 2001); *Bassidiji v. Goe*, 413 F.3d 928 (9th Cir. 2005).
11       An insurance policy is a contract subject to the choice of law provisions codified in Civil Code section
12 1646. *Gitano Group, Inc. v. Kemper Group*, 26 Cal. App. 4th 49, 57 (1994).  Civil Code section 1646
13 provides, "[a] contract is to be interpreted according to the law and usage of the place where it is being
14 performed; or, if it does not indicate a place of performance, according to the law and usage of the place where
15 it is made."  Furthermore, "[t]he language of a writing is to be interpreted according to the meaning it bears in
16 the place of its execution unless the parties have reference to a different place." Cal. Civ. Proc. Code § 1857.
17       The parties do not dispute that the insurance policies neither include a choice of law provision nor
18 indicate a place of performance.  Thus, the court looks first to the place where the contracts were made to
19 determine whether California or Texas law supplies the law for interpreting the terms of Stedman's policies.
20 Applying the relevant statutes demonstrates that the interpretation of the contracts should be governed by Texas
21 law.  Stedman is a Texas corporation.  It procured its insurance policies with Travelers through a Texas
22 insurance broker, Fort Bend Insurance Agency ("Fort Bend"). Floyd Decl. ¶ 3, Exh. A.  It entered into the
23 insurance contracts in Texas with an insurer doing business in Houston, Texas. *Id.* ¶ 2, 3.  The underwriter for
24 the policies were based in Houston, Texas. *Id.* ¶ 4, 5.  Both policies executed by Stedman and Travelers
25 include several endorsements required by Texas law.  Fitts Decl., Exh. A at 6, 19, 20-22; *Id.*, Exh. B at 15,
26 24, 17-18 ("Texas Changes – Conditions Requiring Notice"; "Texas Changes – Cancellation and Renewal";
27 "Premium Discount Endorsement – Texas").
28

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE—C-04-00886 RMW
MAG      6

1    Royal contends that the court may not confine its inquiry to California's statutory choice of law provisions and must engage in the three-step governmental interest analysis most recently set forth in *Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 919 (2001). It claims that *Washington Mutual* requires applying the governmental interest analysis to all choice of law questions and, therefore, has overruled the statutory choice of law provisions set forth in the California Civil Code and Code of Civil Procedure. However, there is no indication in that case that the California statutory choice of law provisions for contracts have been abrogated. *Washington Mutual* involved a class action certification and implicated a more detailed governmental interest analysis than would be warranted where the issue at hand is determining the law governing the interpretation of a contract.

In further support of the contention that California law governs the interpretation of the insurance policies, plaintiffs cite *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637 (1993). *Stonewall*, applying a governmental interest test to the choice of law determination regarding an insurance contract, states that where a casualty insurance contract is in dispute "particular importance is placed on the location of the subject matter of the contract, i.e., the location of the insured." *Id.* at 646. However, *Stonewall* and the other cases cited by Royal that applied the governmental interest test to determine the choice of law for insurance contracts, did so when the statutory choice of law provision was uninformative. In particular, the cases cited by Royal examine the choice of law outside the context of contract interpretation, which is clearly governed by the California statutory directives set forth above. *See, e.g., Stonewall*, 14 Cal. App. 4th at 649-50 (whether liability insurance should be governed by Wisconsin law where punitive damages are covered or by California law where punitive damages are uninsurable); *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 514 (1998) (whether insuring willful misconduct violates California's public policy).

The court thus finds Royal's arguments that Civil Code section 1646 is inapplicable to be unpersuasive. In light of the undisputed evidence that the contract was entered into in Texas and the clear direction provided by section 1646, this court will apply Texas law to interpret the critical language in the contract without need to resort to the *Washington Mutual* government interest analysis. Further, cases like *Stonewall* do not present contract interpretation issues but rather policy questions on issues such as coverage for willful acts.

### C. Traveler's Duty to Defend

An insurer's duty to defend arises when a plaintiff alleges facts that potentially support claims for which there is coverage. *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997); *Gray v. Zurich Ins. Co*, 65 Cal. 2d 263, 275 (1966) ("An insurer is under a duty to defend any 'suit which potentially seeks damages within the coverage of the policy.'"). "Texas courts apply the 'eight corners' rule to determine whether an insurer has the duty to defend an insured, comparing the plaintiff's pleading allegations to the insurance contract provisions without regard to the facts that develop during discovery and trial." *Pilgrim Enterprises, Inc. v. Maryland Cas. Co.*, 24 S.W.3d 488, 493 (Tex. App. 2000) (citing *Merchants Fast Motor Lines.*, 939 S.W.2d at 141). However, "an insurer is required to defend only those cases within the policy coverage . . . . If the petition only alleges facts excluded by the policy, the insurer is not required to defend." *Fidelity & Guaranty Insurance Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982). "[I]n case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in [the] insured's favor." *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W. 2d 22, 26 (Tex. 1965).

Travelers contends that it had no duty to defend Stedman because AvalonBay in its complaint and Greystone in its cross-complaint alleged only facts excluded by the policy. Specifically, AvalonBay did not own The Fountains until 1996 and was unaware of the alleged damage until after it purchased the property. Thus, Travelers asserts, even assuming that AvalonBay's complaint properly alleged that Stedman's acts caused damage of a continuous nature to The Fountains during the policy period, the claimant could have suffered no property damage during the policy period, which ended long before AvalonBay took ownership of the property.

With regard to insurance coverage, Stedman's 1989 policy provides:

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. . . . ."

> b. This insurance applies to "bodily injury" or "property damage" only if:
> (1) . . .
> (2) the "bodily injury" or "property damage" occurs during the policy period."

Mathews Decl., Exh. 1, § I, ¶ 1, at Trav 0008. The 1989 policy defines "property damage" as:

      a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

      b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

*Id.* § V, ¶ 12, at Trav 0018.[3] The parties dispute whether property damage triggering coverage under the Stedman policies occurred between September 22, 1989 and September 22, 1991.

### 1. Duty to Defend Stedman

The parties vigorously dispute whether Travelers had a duty to defend Stedman. Travelers contends it had no duty to defend Stedman in the *AvalonBay* action because the claimant, AvalonBay, could not have suffered property damage until 1996, when AvalonBay purchased the property. The Stedman policies were only in effect from September 22, 1989 through September 22, 1991. Thus, prior to 1996, Travelers argues, no damage to claimant AvalonBay could have occurred. In essence, Travelers asserts that the policy requires damage to The Fountains to have occurred while AvalonBay was owner of the property such that the *claimant* against Stedman suffered the property damage.

### a. Trigger of Coverage

Travelers first contends that Texas has adopted a strict manifestation trigger for damage under the occurrence wording set forth in the Stedman policies that requires the "bodily injury" or "property damage" to occur within the policy period. In *Dorchester Development Corp. v. Safeco Ins. Co.*, 737 S.W.2d 380 (Tex. App. 1987), the Texas Court of Appeals considered the question of "whether there is coverage for property damage resulting from workmanship performed during the policy period when the property damage is not manifested until after the policy period." *Id.* at 383. Examining authorities from the Florida Court of Appeals and Idaho Supreme Court, the court held that "no liability exists on the part of the insurer unless the property damage manifests itself, or becomes apparent, during the policy period." *Id.*

If, as Travelers contends, a manifestation trigger applies, no property damage manifested during the policy period under the allegations in AvalonBay's complaint because the facts alleged in the AvalonBay complaint set forth that AvalonBay only became aware of the property damage after taking ownership of The

---

[3] Stedman's 1990 policy contains similar, but not identical, language. *See* Mathews Decl., Exh. 2, § I, ¶ 1, at Trav 0032; *Id.* § V, ¶ 12, at Trav 0041. Neither party contends that the differences in the language of the two policies is material to the determinations to be made.

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE—C-04-00886 RMW
MAG        9

1  Fountains in 1996. AvalonBay alleged, "Following the purchase of the Project, but within three (3) years of
2  the filing of the original complaint in this action, Plaintiff became aware of certain deficiencies in and to the
3  Project." ATAC ¶ 21. Because no property damage manifested during the policy period, Travelers contends
4  that it could have no duty to defend.

5  Royal argues that *Dorchester* inaccurately stated the rules set forth in the out-of-state authorities on
6  which it relied and thereby inadvertently created a manifestation trigger. It contends that the Texas court's
7  statements of the Florida and Idaho cases reveals the misstatement, which has since been perpetuated through
8  subsequent Texas court decisions and Fifth Circuit opinions applying Texas law. *See, e.g., Cullen/Frost Bank*
9  *v. Commonwealth Lloyd's Ins. Co.*, 852 S.W. 2d 252, 257 (Tex. App. 1993) (stating "coverage is not
10 afforded unless an identifiable damage or injury, other than merely causative negligence, takes place during the
11 policy period"); *Am. Home Assurance Co. v. Unitramp Ltd.*, 146 F.3d 313, 314 (1998) (citing to
12 *Dorchester* in support of its interpretation of *Cullen/Frost Bank* stating "We read 'identifiable' as synonymous
13 with 'manifest' and 'apparent.'").

14 Royal's criticism of *Dorchester* has merit. The Texas Court of Appeals summarized the Florida court's
15 holding on which it relied as follows:

> The court said that the words 'caused by an occurrence' within the policy provisions did not indicate that coverage was afforded for damages sustained after expiration of the policy period due to causative negligence occurring within the policy period. *In other words, coverage is not afforded unless an identifiable damage or injury, other than merely causative negligence, took place during the policy period.*

*Dorchester*, 737 S.W.2d at 383 (summarizing *Travelers Insurance Company v. C.J. Gayfer's & Co. Inc.*, 366 So. 2d 1199, 1201 (Fla. 1979)). The Texas Court of Appeals then went on to quote the Idaho Supreme Court on whose opinion it also relied:

> [I]t is well settled that the time of the occurrence of an "accident," within the meaning of a liability indemnity policy, is not the time the wrongful act was committed but the time the complaining party was actually damaged.

*Id.* (quoting *Miller's Mutual Fire Ins. Co. of Texas v. Bailey, Inc.*, 647 P.2d 1249, 1251 (Idaho 1982)). But then the *Dorchester* court goes on to hold that the that "no liability exists on the part of the insurer unless the property damage *manifests* itself, or becomes apparent, during the policy period." *Id.* (emphasis added). This newly-appearing manifestation requirement is accompanied by no additional explanation but appears to be the

court's synthesis of the two cases upon which it relies. As there is no mention of a manifestation requirement in either of the cited opinions, the rule announced by *Dorchester* may, indeed, have inadvertently adopted a manifestation trigger when the Florida and Idaho cases cited seem to stand only for the proposition that there must be at least some demonstrable property damage during the policy period.

A relatively recent Texas Court of Appeals' decision held that an exposure trigger should be applied to a continuous property damage claims resulting from asbestos. Examining Texas and Fifth Circuit cases addressing the issue, the appeals court in *Pilgrim Enterprises, Inc. v. Maryland Cas. Co.*, 24 S.W.3d 488, 496 (Tex. App. 2000), concluded that, because the Texas Supreme Court had not addressed the issue, it faced a matter of first impression in determining what trigger to apply to continuous property damage in conjunction with asbestos contamination. The *Pilgrim* court looked at the nature of the policy. As here, the policy was an occurrence-based policy, covering "all claims based on an event occurring during the policy period, regardless of whether the claim or occurrence is brought to the attention of the insured or made known to the insurer during the policy period." *Yancey v. Floyd West & Co.*, 755 S.W. 2d 914, 918 (Tex. App. 1988). It contrasted claims-made policies which cover "only injuries or damages that come to the attention of the insured and are made known to the insurer during the policy period." *Id.* The court then noted that the policy language contained no express reference to a manifestation requirement or other statement that the damage must be identified during the policy period. *Pilgrim*, 24 S.W. 3d at 497. Finally, it applied the principle of insurance policy construction that "doubt as to whether the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insured to defend the action . . . will be resolved in [the] insured's favor." *Id.* at 498 (citing *Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W. 2d 22, 26 (Tex. 1965)).

As noted by the *Pilgrim* court, the Texas Supreme Court has thus far declined to rule on what the trigger of coverage for continuing damage is. *American Physicians Ins. Exchange v. Garcia*, 876 S.W.2d 842, 853 n.20 (Tex. 1994) (surveying various states' triggers and stating "We believe it would be unwise to select among these tests, or formulate our own, when the outcome of this case does not require resolution of this issue."). However, it seems likely that the Texas Supreme Court would follow the *Pilgrim* approach. That approach seems consistent with the actual language of the Travelers policies—"'property damage' occurs during the policy period." The policy language does not suggest that the damage must both occur and be discovered

during the policy period. This interpretation is consistent with constructions made by courts in other jurisdictions. *See, e.g., Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 689 (1995) ("We agree with the conclusion of the Court of Appeal below that to apply a manifestation trigger of coverage to Admiral's occurrence-based CGL policies would be to effectively rewrite Admiral's contracts of insurance with Montrose, transforming the broader and more expensive occurrence-based CGL policy into a claims made policy.").

### b. Existence of Property Damage

Travelers next argues that Texas law requires that the *claimant* suffer the property damage during the policy period in order to trigger liability coverage. Thus, because AvalonBay as claimant did not own The Fountains at the time the policy was in effect, it could not have suffered damage during the policy period. Travelers cites language from a Texas and a California case that says that an occurrence takes place when the injured party suffers damage, rather than at the time the act causes the damage. *Snug Harbor, Ltd. v. Zurich Ins.*, 968 F.2d 538, 544 (5th Cir. 1992); *Montrose*, 6 Cal. 4th at 300. However, these cases were distinguishing the time the negligent act occurred from the time when damage first occurred. They were not dealing with a situation such as the one here, where damage occurred during the policy period but did not become apparent until after the property changed hands. It appears that no Texas court has yet addressed whether property damage triggers coverage in a case where the damage occurs during the policy period, but the claim for such damage is not made until after the property has changed hands. However, it seems unlikely that the Texas Supreme Court would read into a CGL policy a requirement that there must be continuous ownership of property between the time an occurrence-based policy is issued and the claim in order for liability coverage to arise under a CGL policy. The Stedman policies define property damage as "physical injury to tangible property . . . including loss of use of that property." They impose no requirement that the present claimant have owned the property at the time of the physical injury. As the California Court of Appeal noted, "Nowhere do the policies say to whom that property must belong, save that it must not belong to the insured. In other words, the policies themselves do not expressly require that the eventual claimant own the property at the time the property is damaged for coverage to ensue; they merely require that the damage, the 'physical injury to . . . tangible property,' take place during the policy period." *Garriott Crop Dusting Co. v. Superior Court*, 221 Cal. App. 3d 783, 791 (1990).

AvalonBay's third amended complaint sufficiently alleges that damage occurred during the Stedman policy period and the policy sets forth no requirement that the claimant own the property during the policy period. Thus, based on the allegations in AvalonBay's complaint and the policy terms, Travelers had a duty to defend Stedman.

### 2. Duty to Defend Greystone

Plaintiffs contend that Travelers had a duty to defend Greystone as an additional insured under Stedman's policy. Travelers, on the other hand, moves for summary judgment that Greystone has no direct claim for breach of contract because neither Greystone nor its predecessor in interest, Worthing, were covered under the Stedman insurance policy as additional insureds.

As evidence that Greystone and Worthing were additional insureds under the Stedman policy, plaintiffs present three certificates of insurance issued by Stedman's insurance agent, James Harper of Fort Bend Insurance Agency. Eeds Decl. Supp. Mot. Summ. Adjudication, Exh. 2-3. Travelers argues that these certificates do not constitute evidence that Travelers ever added these entities as additional insureds under Stedman's policies. Plaintiffs concede that certificates of insurance standing alone do not confer insured status. Opp. Travelers' Mot. Summ. J. at 24. Nevertheless, they contend that there is sufficient evidence to raise a material issue of triable fact as to whether Fort Bend acted as Travelers' actual or ostensible agent when issuing the certificates of insurance.[4]

An agency is either actual or ostensible. Cal. Civ. Code § 2298. "An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civ. Code § 2300. To establish a triable issue of fact that an insurance agent otherwise unaffiliated with the insurer was the insurer's ostensible agent, a plaintiff asserting that it is an additional insured must produce some evidence that the insurance company, not the insurance agency, "intentionally or by want of ordinary care has caused or allowed [plaintiff] to believe the agent possesses such authority. . . . Ostensible authority must be established through the acts or declarations of the principal and not

---

[4] Travelers objects to plaintiffs' submission of these certificates, submitted as attachments to the Declaration of Walter Eeds, as improperly authenticated. However, Eeds's declaration sets forth that he was an employee of both Worthing and Greystone during the relevant time and received these certificates. The court finds this authentication sufficient to overrule Travelers' objection to the evidence.

1  the acts or declarations of the agent." *Am. Cas. Co. of Reading, Pennsylvania v. Krieger*, 181 F.3d 1113,
2  1121 (9th Cir. 1999) (citing *Preis v. American Indem. Co.*, 220 Cal. App. 3d 752, 761 (1990)).

3  Plaintiffs acknowledge that they currently cannot prove that Mr. Harper acted as Travelers' actual or
4  ostensible agent but that "they mean to try."  Opp. Travelers' Mot. Summ. J. at 25.  However, plaintiffs have
5  presented no evidence of acts or statements by Travelers in support of their contention that Harper acted as
6  Travelers' agent.  Nevertheless, the court cannot finds that evidence presented by Travelers, combined with
7  the certificates of insurance, are sufficient to raise a question as to whether Harper may have acted as Travelers'
8  agent.

9  Travelers submitted the declaration of William C. Floyd, in support of its contentions that Fort Bend
10 Insurance Agency was a Texas corporation and the insurance policy was underwritten in Texas.  This
11 declaration states that "Fort Bend Insurance Agency was one of the insurance agencies for which I was
12 responsible.  When I was account manager, I handled all applications for new business and renewals that
13 Travelers and its related entities received from Fort Bend Insurance Agency in Stafford, Texas."  Floyd Decl.
14 ¶ 4.  That declaration also establishes that Fort Bend submitted an application for insurance for Stedman to
15 Travelers, which Floyd claims he was responsible for underwriting.  *Id.* ¶ 5.  Floyd also states that he
16 "communicated with James Harper regarding Stedman Construction Companies . . . ."  *Id.*  Travelers'
17 declaration, combined with the fact that the certificates of insurance were provided by Fort Bend, is sufficient
18 to raise a triable issue of fact as to whether Harper acted as Travelers' ostensible agent.  As the Ninth Circuit
19 stated in *Krieger*, "[I]t is arguable that one who has obtained insurance through a broker would ask the same
20 broker to have an additional insured covered by the policy."  Thus, here, as in *Krieger*, there "is a triable issue
21 of fact whether the insurance company, having issued the policy at the request of that broker, has clothed the
22 broker with ostensible authority to add an additional insured to that policy."  *Krieger*, 181 F.3d at 1121.

23 **C.  Greystone's Motion for Summary Adjudication**

24 As set forth above, Travelers had a duty to defend Stedman.  Thus, Royal's motion for summary
25 adjudication is granted on this issue.  Furthermore, as discussed, the court has determined that, under Texas
26 law, the occurrence of covered damage to property, regardless of whether the present claimant owned it when
27 the damage occurred, will trigger coverage.

28

### D. Travelers' Motion for Summary Judgment

#### 1. Claims Against Stedman

Defendant moves for summary judgment that plaintiffs have abandoned the three claims for relief asserted directly against Stedman by failing to serve Stedman. Travelers contends that the court should dismiss these claims under Federal Rule of Civil Procedure 4(m). Plaintiffs did not oppose this motion. Thus, the following claims are dismissed: (1) Greystone's express indemnity claim against Stedman; (2) AvalonBay's assigned strict liability claim against Stedman; and (3) AvalonBay's assigned negligence claim against Stedman.

#### 2. Declaratory Relief Claim

Defendant likewise moved for summary judgment on plaintiffs' declaratory judgment claim on the grounds that it is duplicative of the issues to be adjudicated in this action. Again, plaintiffs failed to address defendant's motion in any briefing. Plaintiffs' claim for declaratory relief is hereby dismissed.

#### 3. Breach of Contract Claims

As set forth above, the court has determined that Travelers had a duty to defend Stedman in the AvalonBay action. Nevertheless, Travelers asserts that Royal has not sufficiently demonstrated that Stedman assigned its claims to Greystone. However, plaintiffs attached to their complaint the "Assignment of Cause of Action in Exchange for Covenant not to Execute" executed between the Greystone and Stedman on February 26, 2002. That assignment provides:

> In consideration of Greystone's covenants and undertakings hereunder, Stedman hereby assigns and transfers to Greystone all claims and causes of action Stedman may now have or hereafter acquire against Travelers Insurance based on Travelers Insurance's failure and refusal to defend and indemnify Stedman as hereinabove recited.

The court finds this is sufficient evidence to demonstrate that Stedman assigned its claims against Travelers to Greystone. Accordingly, Travelers' motion for summary judgment on Greystone's assigned breach of contract claim is denied.

As discussed, there is also sufficient evidence on record to present a material issue of disputed fact as to whether Fort Bend acted as Travelers' ostensible agent in issuing the Certificates of Insurance. Furthermore, although plaintiffs have produced no evidence that Greystone suffered damages as a result of any refusal of Travelers to defend or indemnify because it admitted that Royal undertook its defense and payment of the settlement, Greystone is likely an indispensable party to this action. Greystone's direct breach of contract claim

is likely necessary for Royal's subrogated recovery, should such recovery be warranted, or Royal's equitable contribution claim. Accordingly, Traveler's motion for summary judgment on Greystone's direct claim for breach of contract is likewise denied.

### 4.   Royal's Equitable Contribution Claim

As set forth above, there is an issue of fact as to whether Greystone was an additional insured under the Stedman policies. Thus, Travelers' contention that it is entitled to summary judgment on Royal's equitable contribution claim because Royal and Travelers were not co-insurers of Greystone's loss fails.

Travelers further contends that Royal's claim for equitable contribution is barred by a two-year statute of limitations. *Century Indemnity Co. v. Superior Court*, 50 Cal. App. 4th 1115, 1117 (1996).[5] Travelers argues that because Greystone settled the action with AvalonBay on September 6, 2001, its contribution claim, filed in state court on January 7, 2004 is time-barred. Plaintiffs, on the other hand, contend that the contribution claim is timely because Royal paid the final settlement in the AvalonBay action on January 9, 2002, within the statute of limitations.

"[A]n action for equitable indemnity does not accrue, for purposes of the statute of limitations, until the indemnitee pays a judgment or settlement that entitles him to indemnity . . ." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 378 n.12 (2003) (citing *Valley Circle Estates v. VTN Consolidated, Inc.*, 33 Cal. 3d 604, 611 (1983)). In its reply, Travelers shifts to arguing that Royal failed to prove that it ever paid the settlement. As set forth below, although untimely, the court chooses to accept plaintiffs' proffer of a copy of the settlement check as evidence that Royal paid the settlement amount. The fact of payment appears not to be subject to dispute and Travelers was not prejudiced by the late disclosure. Thus, the court denies Travelers' motion for summary judgment on Royal's equitable contribution claim.

---

[5]   The court agrees with Travelers that the two-year statute of limitations, not the four-year statute of limitations applicable to contracts, applies to the equitable contribution claim. *Century*, 50 Cal. App. 4th at 1117; *cf. Signal Cos., Inc. v. Harbor Ins. Co.*, 27 Cal. 3d 359, 369 (1980) ('The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other."); *Travelers Cas. and Sur. Co. v. Century Sur. Co.*, 118 Cal. App. 4th 1156, 1162 (2004).
.

### E. Plaintiffs' Motion to Strike Portions of Travelers' Briefing

Plaintiffs moved to strike portions of Travelers' briefing. Plaintiffs seek to strike arguments on page 1 of Travelers' reply in support of its motion for summary judgment that (1) plaintiffs have presented no evidence that Royal paid any sums on the settlement; (2) that Royal has not produced evidence that it insured Greystone; and (3) plaintiffs have failed to prove a valid assignment of claims between Stedman and Greystone.

Plaintiffs contend that they were not required to respond on these points because Travelers produced no evidence in support of its positions in its motion for summary judgment. As set forth above, where the non-moving party bears the burden of proving an element of a claim, a party moving for summary judgment may simply "point[ ] out . . . the absence of evidence to support [the] claim." *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). Thus, Traveler's responds that plaintiffs should have presented evidence to refute these points in response to Travelers' motion for summary judgment.

First, plaintiffs submitted a supplemental declaration on April 20, 2005, two days before the hearing on the parties' motions, presenting a copy of a check for $3.6 million dated January 9, 2002 and made out to the trustee in the AvalonBay action. Travelers objected to the late filing on the grounds that this information had not previously been produced in discovery and contends that this court should strike the additional evidence. While the court agrees that the late production and receipt by the court of this evidence violates the rules of procedure, it elects to consider the evidence establishing that Royal paid the settlement in the AvalonBay action. Plaintiffs' motion to strike is denied as to this argument.

Second, the court agrees that Travelers' argument that plaintiffs had failed to demonstrate that Royal insured Greystone should be stricken. Travelers' motion states, "Here, *because Royal insured Greystone* but Travelers did not, Royal has no claim against Travelers for equitable contribution . . .". Travelers' Mot. Summ. J. at 12-13 (emphasis added). Travelers did not place the relationship between Royal and Greystone at issue in its motion and, in fact, indicated that the issue was undisputed. Plaintiffs' motion to strike is granted as to this argument.

Third, since the court finds sufficient evidence that Stedman assigned its claims to Greystone in the attachment to the complaint titled "Assignment in Exchange for Covenant Not to Execute" signed on February 26, 2002 by representatives of Greystone and Stedman, plaintiffs' motion to strike Travelers' motion regarding the assignment is moot.

Plaintiffs also seek to strike section III of Travelers' opposition to plaintiffs' motion for summary adjudication setting forth Travelers' arguments regarding plaintiffs' ability to proceed directly against Stedman under California Insurance Code section 11580(b)(2). Plaintiffs contend that these arguments are an impermissible attempt by Travelers to continue the arguments from its own motion for summary judgment in order to escape the page limit imposed by the Local Rules. Plaintiffs' motion to strike is denied. Plaintiffs' motion for summary judgment asserts in a footnote on page 3 that plaintiffs are permitted to proceed directly against Stedman under California Insurance Code section 11580(b)(2). After raising the issue in their motion, plaintiffs cannot complain that Travelers addressed it in opposition. Furthermore, the court agrees that direct action under this insurance code section was not pleaded in the complaint.

### III. ORDER

Plaintiffs' motion for summary adjudication and defendant Travelers' motion for summary judgment are granted and denied as follows:

1. Summary adjudication is granted that Travelers had a duty to defend Stedman and that coverage under the subject policies was triggered by the occurrence of property damage without regard to when the damage was discovered or when AvalonBay acquired the damaged property is granted;
2. Royal's direct claims against Stedman are dismissed.
3. Royal's declaratory judgment claim is dismissed.
4. Travelers' motion for summary judgment on plaintiffs' breach of contract claims is denied.
5. Travelers' motion for summary judgment on Royal's equitable indemnity claim is denied.
6. Plaintiffs' motion to strike portions of Traveler's reply is granted and denied as set forth above.

The parties shall appear for a case management conference on Friday, September 30, 2005 at 10:30 a.m. to discuss resetting the trial and pre-trial dates previously vacated at the parties' request.

DATED:     9/6/05                              /s/ Ronald M. Whyte
                                                RONALD M. WHYTE
                                                United States District Judge

1 **Notice of this document has been electronically sent to:**

2 **Counsel for Plaintiff(s):**

3 Michael Mathews          mathewsesq@earthlink.net

4 **Counsel for Defendant(s):**

5 David Hungerford         dhungerford@morison-knox.com
Michael D. Prough        mdp@morison-knox.com

6

7 Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

8

9

10
**Dated:**          9/6/05                                    /s/ MAG
11                                                            **Chambers of Judge Whyte**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER RE: CROSS MOTIONS FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE—C-04-00886 RMW
MAG                                          19